**TERRITORY ex rel. Harrison v. HOLT, Mayor, et al.**

(Second Division. Nome. May 15, 1920.)

No. 2835.

1. **Elections** ☞259—Returns—Municipal Corporations.

The duties of a canvassing board in incorporated towns are purely ministerial, and they cannot go beyond the returns of the election boards. To do so would be the exercise of judicial powers, which they do not possess.

2. **Elections** ☞247—Returns.

All the votes, certificates, tally sheets, and other papers or envelopes, duly authenticated by the election board and returned to the canvassing board, constitute the returns of the election.

3. **Elections** ☞259—Canvassing Boards—Municipal Corporations.

It is the duty of the canvassing board at a municipal election to scrutinize and tabulate the returns, and make their findings in accordance with the returns of the election board, unless there is a plain fraud on their face, or a mistake or error in the tabulation. The canvassing board cannot review their action, as they are not a judicial body, and exercise no judicial functions.

4. **Mandamus** ☞74(1)—Election Officers.

Mandamus will not lie to require election officers to perform an act not within the scope of their lawful duties.

Fred Harrison, of Nome, for plaintiff.
O. D. Cochran, of Nome, for defendants.

HOLZHEIMER, District Judge. In passing on the right of the petitioner for a writ of mandate in the case at bar, the court does so without passing upon any irregularities of the

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

election board, canvassing board, or others in the municipal election, which brought about the demand for the writ of mandate, nor does he pass upon the right or legality of the Lovegren vote, nor must it be considered or understood, in anything said in this memo. opinion, that any of the aforesaid acts would in any way affect its decision in another action.

The demurrer, or a renewal of the same at the close of the evidence, striking at the sufficiency of the writ, may have a great deal of merit in it; still there is sufficient for the court to act upon for all purposes in this case, while the court is of the opinion that the better practice would be to set forth in the writ the same facts as are set out in the petition, and thus avoid many complications, such as have arisen in this case, for instance.

This case has been a very complex one, and the court has not been greatly aided by the pleadings and evidence. The court has refused to strike certain allegations in the pleadings, and admitted certain evidence, which would have been more applicable in a contest. It has done so, not for the purpose of settling questions that would more properly come up in a contested case, or testing the legality of the Lovegren vote. This of necessity must be so, for the purpose of assisting the court to more accurately get at the true state of affairs, and as to what were the returns.

With this in view, and all superfluous matter eliminated, the real issue is disclosed. After listening to all the evidence, the arguments of respective counsel, and the reading of the authorities as cited by both parties, I find that there are but two points left for consideration: (1) What were the returns submitted to the canvassing board? (2) What were their duties? I believe, from all the authorities and arguments advanced, both counsel agree that their duties are purely ministerial, and that they cannot go beyond the returns of the election board. To do so would be the exercise of judicial powers, which, under the great weight of authority, they have no right to do. This, to my mind, is a good and salutary law, because the men on these boards are laymen, inexperienced, and not trained in the law. Elections would be controlled at the whim or interest of the canvassing boards, or their friends, a condition that would be dan-

gerous and fatal to the elective franchise, and against law and justice.

The question in dispute is: What are the returns? I believe all the votes, books, certificates, tally sheets, and other papers or envelopes duly authenticated by the election board and returned to the canvassing board are the returns, and it is their duty to canvass the same, and by canvass I mean scrutinize and tabulate them, and make their finding in accordance with the returns of the election board, unless there is a plain, unquestioned fraud on their face, or a mistake or error in the tabulation. That is all their duty—their sole duty—and anything else would be the exercise of a judicial function, and not within their province. Now, did they do this? Let us see. They tabulated the tally sheets and found no error. They gave Pearson 107, Harrison 108, and Rice 109 votes. They scrutinized the certificate, and what did that show? It showed the same result, with this addition, that no ballots were destroyed, no ballots rejected, and one ballot sealed in an envelope and not counted. What would be the next thing naturally for the board to do? They turned to the envelope, and written on the envelope were these words:

"Ballot received from Clarence L. Lovegren sealed herein by said Lovegren, but not opened or ballot counted because the said Lovegren was not considered entitled to vote."

This was signed by the inspector and judges. Now, it does not make any difference to them who wrote this, or what influenced them to sign. If they signed, it became the act of the election officers, and the canvassing board could not go into and try out their actions or the legality of the Lovegren vote. That is for the courts in another action. All returns showed the vote had not been counted for the reasons above stated. This is not a mistake in tabulation; if anything, it is a mistake in judgment, or the arbitrary or fraudulent action of the election judges. The canvassing board cannot review their action, as they are not a judicial body, and exercise no judicial functions. So you see they canvassed and scrutinized the envelope; the vote was not lost, but accounted for (preserved, if you will), for any other action that

might be taken with reference to said election, or the legality of said vote.

Now, what else did the canvassing board do? They scrutinized the registration and poll books. What did they find there? It is safe to say, without successful contradiction, that they were unable to tell from such inspection whether the voter, Lovegren, had voted, and the court is free to confess, from the facts before the canvassing board, he is in the same condition or frame of mind. This, however, does not take in the evidence received by the court in the case, which was taken only for the purpose heretofore mentioned. This evidence was not before the canvassing board, and they had no right to take evidence; they are controlled solely by the face of the return. Such was the finding of the canvassing board, as evidenced by the resolution passed by that board at their first meeting—I mean the resolution passed without any interlineation. The differences in the poll and registration books, the changes in the resolution, and the reasons given for such differences and changes, the court will not pass upon in this action.

Taking the returns before them, all the canvassing board could do, however, was to find that the election board had refused to count the vote, for some reason of their own, whether voted or not voted, and they had no right to speculate on that, or revise the judgment of the election board.

For the purpose of this hearing the court holds that it does not make any difference whether the vote was cast or not, and for some reason or other, whether rightfully or wrongfully, the election board refused to count it; it thereby became a rejected vote. No matter what words were used in the certificate, that action cannot be reviewed by the court in a mandamus proceeding; and, if the court cannot review it, certainly the canvassing board have no such power. To do otherwise would be to allow them to exercise a judicial function, which is beyond their power as ministerial officers.

To briefly summarize: The gist of this action is to invoke the power of the court in a mandamus proceeding to compel the canvassing board to perform a duty which it is claimed they failed to do. It is conceded by both parties to the action that the duties of the canvassing board are purely ministerial. If they have failed to perform any such

ministerial duty, mandamus will lie to compel them to do so. If they have not failed in their performance of such ministerial duties, mandamus will not lie to compel them to do anything in addition to what they have done.

The facts in this case disclose that the election board passed up to the canvassing board with their return one ballot which they failed or refused to count, with their reasons therefor indorsed on the envelope containing the ballot.

The reasons assigned for not counting the ballot may be valid or invalid, or their action in refusing to count the ballot may have been purely arbitrary; the reason assigned for not counting the ballot is entirely immaterial for the purpose of this action. If their refusal to count the ballot was wrongful, the legal remedy is by another sort of action. The question presented here is: Was it a part of the ministerial duties of the canvassing board to have counted that ballot in canvassing the returns sent up to them? This the petitioner asks to have done by an order of the court.

The court has reached the conclusion, from the great preponderance of the authority on the subject, that it was not a part of the ministerial duties of the canvassing board to have counted that ballot, regardless of any reasons assigned by the election board for rejecting it. The authorities are uniform in holding that a canvassing board cannot revise the judgment of the election board in rejecting a ballot, and thus pass upon the qualification of a voter for the second time. It follows that, if the canvassing board could not lawfully do so, the court is powerless to command them to do so in a mandamus proceeding.

The aggrieved party is not without a remedy in case the election board acts wrongfully and in violation of the rights of voter or candidate, or is mistaken in its judgment in rejecting a ballot. The validity of the whole proceeding may be tried out in an action for that purpose, or the aggrieved party, if unlawfully deprived of his vote, has his remedy in a personal suit for damages, but it cannot be reached by an action in mandamus.

The peremptory writ is therefore denied.